IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-424 |
| | § | C.A. No. C-07-45 |
| JOSE DANIEL GONZALEZ, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING
MOTION  TO VACATE, SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jose Daniel Gonzalez's ("Gonzalez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 45),[1] which was received by the Clerk on January 29, 2007.  The Court ordered the government to respond (D.E. 48), and the government filed a response in which it also moves for summary judgment, or alternatively, for dismissal. (D.E. 56.) To date, Gonzalez has not filed a reply.

As discussed in detail herein, Gonzalez lists four separate claims in his motion, but a careful review of them reveals only two basic claims: (1) that his speedy trial rights were violated; and (2) that he was denied effective assistance of counsel.  His speedy trial claim is subject to dismissal because he waived his right to file that claim.  Portions of his ineffective assistance claim also fall within the scope of his waiver and thus should be dismissed.  Other portions of the claim, which arguably fall outside the scope of his waiver,

---

[1]  Dockets entries refer to the criminal case, C-05-cr-424.

fail on their merits.  For these reasons, the Court DENIES his § 2255 motion.  Additionally,

the Court DENIES Gonzalez a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTS AND PROCEEDINGS

**A.**     **Summary of Offense[2]**

On January 25, 2005, Corpus Christi police officers were dispatched to a local bar

in regards to an individual inside possessing a gun.  Upon arrival, the officers made contact

with the reporting parties outside of the bar.  The witnesses informed the officers that the

individual, later identified as Gonzalez, was inside, sitting at the corner of the bar with a

large chrome revolver on his lap.

The officers entered the bar and ordered everyone to place their hands in the air.

Everyone complied, except for Gonzalez, who remained with his back towards the entrance

and his hands on the bar.  The officers again ordered him to raise his hands; however,

Gonzalez placed his hands on his lap.  The officers rushed Gonzalez and one of the officers

wrapped his arm around Gonzalez's neck and pulled him off the bar stool and onto the floor.

In the process, a large chrome Smith and Wesson .357 magnum revolver fell out of his lap

and onto the floor.  The weapon was fully loaded with six .357 rounds of ammunition.

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 8 of Gonzalez's
Presentence Investigation Report ("PSR").

The officers also located a loaded Raven Arms .25 automatic pistol in a clear plastic bag within a black wool coat that was on the stool immediately to Gonzalez's left.  None of the other bar patrons claimed ownership of the coat.  Both weapons were tested and found to be operable.  A firearms trace yielded incomplete results.  In addition, neither weapon was stolen and both were manufactured outside the State of Texas after the year 1898.

A criminal record check on Gonzalez revealed that he had been convicted of three prior felony offenses: (1) felony theft, wherein he was sentenced to ten (10) years imprisonment; (2) engaging in organized criminal activity, wherein he was sentenced to fifteen (15) years imprisonment; and (3) robbery, wherein he was sentenced to ten (10) years imprisonment.

## B.    Criminal Proceedings

On July 27, 2005, Gonzalez was charged in a single-count indictment with knowingly and intentionally possessing two firearms after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.E. 1.)  On October 26, 2005, Gonzalez pleaded guilty pursuant to a written plea agreement.  (D.E. 16.)  In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive a three-level credit for acceptance of responsibility, and to recommend a sentence at the lowest end of the applicable guideline range. (D.E. 16.)  The

plea agreement contained a voluntary waiver of Gonzalez's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 USC § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States, as set forth in 18 USC § 3742(b). Additionally, the defendant is aware that Title 28, USC § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 16 at ¶ 7) (emphasis in original). The agreement was signed by both Gonzalez and his counsel. (D.E. 16 at 5.)

During the rearraignment, the prosecutor outlined the plea agreements of Gonzalez and other defendants being rearraigned, including a statement that the defendants "waive their right to appeal the sentence imposed and the manner in which it is determined, as well as the right to collaterally attack the conviction or sentence under Title 28, United States Code, Section 2255, or in any other similar post-conviction proceeding ..." (D.E. 50, Rearraignment Transcript ("R. Tr.") at 21.) After that summary was given, Gonzalez testified that the plea agreement was his, that he read it and discussed it with his attorney, that he understood it, and that he signed it. (R. Tr. at 21-22.)

The Court questioned Gonzalez under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: Each of you are also giving up a right to file a petition to collaterally attack your conviction and your sentence after it becomes final.  You are giving up that right that exists under Title 28, United States Code, Section 2255, which is generally known as a motion to correct or vacate a sentence or conviction.  You are giving up that right as well, so that the conviction and sentencing here will be final.  Do you understand? ... Mr. Gonzalez?
>
> DEFENDANT GONZALEZ: Yes, sir.
>
> THE COURT: And do you want to give up that right as well? Mr. Gonzalez?
>
> DEFENDANT GONZALEZ: Yes.
>
> ...
>
> THE COURT: And have you discussed the implications of giving up that right with your attorney? Mr. Gonzalez?
>
> DEFENDANT GONZALEZ: Yes, sir.

(R. Tr. at 25-26.)  It is clear from the foregoing that Gonzalez's waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on February 9, 2006.  The Court sentenced Gonzalez to 57 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term, and also imposed a $100 special assessment.  (D.E. 21, 22.) Judgment of conviction and sentence was entered February 13, 2006.  (D.E. 22.)

5

Consistent with his waiver of appellate rights, Gonzalez did not appeal.  Gonzalez's timely § 2255 motion was received by the Clerk on January 29, 2007. (D.E. 45.)

## III.  MOVANT'S ALLEGATIONS

In his motion, Gonzalez first argues that his constitutional rights were violated because he was not given a speedy trial.  He repeatedly states that he was arrested by the police on January 25, 2005.  He claims that three days later the an ATF agent contacted the Corpus Christi Police Department and told them that the case would be handled federally. He complains that 183 days elapsed between his arrest and the issuance of a federal indictment, which he claims violated his speedy trial rights.

Second, he argues that his counsel was ineffective because he did not advise him of his speedy trial rights or challenge the government's violation of his speedy trial rights and because his counsel did not attempt to investigate his case.  He also appears to be claiming that he was pressured into pleading guilty, or that his counsel's advice to plead guilty was constitutionally ineffective because counsel should have instead moved for dismissal of the indictment on the grounds of a speedy trial violation.  (See D.E. 46, "Brief" at 15-16; "Statement of Facts" at 3-4.)  For the reasons set forth herein, Gonzalez's claims fail.

## IV.  DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the

district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

## B.    Gonzalez's Waiver of § 2255 Rights

The Court does not reach the merits of most of Gonzalez's claims because they fall within the scope of his waiver.   See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). First, his claim of a violation of speedy trial rights falls clearly within the scope of his waiver, and is thus barred.[3]  Likewise, his claims that his counsel failed to investigate or to move for dismissal based on a speedy trial violation fall within the scope of his waiver. United States v. White,

---

[3]  Even if it were properly before the Court, there is no merit to his contention that his speedy trial rights were violated. The Speedy Trial Act requires all trials in cases where a defendant does not plead guilty to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Defendant pleaded guilty, but even if he had not, his indictment was issued on July 27, 2005 and he first appeared before this Court on September 9, 2005. His set trial date of October 26, 2005 was only 47 days from the date of his first appearance. Thus, no speedy trial violation occurred in this case.

307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

In his supporting brief, however, Gonzalez appears to be claiming that his counsel rendered ineffective assistance by both advising him to plead guilty without and by somehow pressuring him into pleading guilty.  (See D.E. 46, "Brief" at 15-16; "Statement of Facts" at 3-4.)  These claims arguably fall outside the scope of his waiver, because they can be interpreted as a challenge to the validity of his plea, and hence his waiver.  See White, 307 F.3d at 343-44.  Thus, the Court turns to the merits of these claims.

## C.     Alleged Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984).  United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court

need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). When viewing the record as a whole, it is clear that Gonzalez cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Gonzalez must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Gonzalez's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Gonzalez testified in open court that he had received a copy of his indictment, discussed it with his attorney, and that he understood it. (R. Tr. at 8.) He testified that he had enough time to discuss his case with his attorney, that he was satisfied with his attorney's services, that his attorney had been a good lawyer for him, answered all of his questions and made himself available to him, and that his attorney was following Gonzalez's instructions. (R. Tr. at 9-11.) The Court informed Gonzalez of the various trial

rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 11-15.)  The Court informed Gonzalez of the charge against him and Gonzalez testified that he understood the charge.  (R. Tr. at 15.)

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Gonzalez the maximum punishment that he might receive.  Specifically, the Court informed him that he could be sentenced to a maximum of ten years in prison and a maximum fine of $250,000. The Court also informed him that there was a mandatory $100 special assessment, and a supervised release term of not less than two years, and no more than three years.  (R. Tr. at 18.) Gonzalez testified that he understood.  (R. Tr. at 18.)  Gonzalez further testified that no one had threatened him or forced him to plead guilty, that no one had promised him what his sentence would be, that it was his decision to plead guilty, and that he was pleading guilty because he was guilty.  (R. Tr. at 19-20, 26.)

Gonzalez's sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).   Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Gonzalez's sworn statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, including his right to § 2255 relief, and that no one was forcing him to plead guilty.  See  Wilkes, 20 F.3d at 653.

In short, Gonzalez cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance.  Thus, Gonzalez cannot prove the prejudice prong of the <u>Strickland</u> inquiry, and it is unnecessary to determine whether his counsel's performance was deficient.[4] His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Gonzalez's challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable.  Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claim.

## D.     Waiver of § 2255 Rights

As noted, it is clear from the rearraignment that Gonzalez understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 22.)  <u>See</u> <u>Wilkes</u>, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, Gonzalez's statements under oath are entitled to a strong presumption of truthfulness.  <u>Wilkes</u>, 20 F.3d at 653; <u>Cothran</u>, 302 F.3d at 283-84.  Those

---

[4] The Court further notes, moreover, that Gonzalez cannot show deficiency or prejudice as to his claim that his counsel should have filed a motion to dismiss the indictment for a speedy trial violation.  As discussed <u>supra</u> at note 3, there was no speedy trial violation in this case.  Thus, Gonzalez has not stated a valid claim of ineffective assistance with regard to this issue. <u>See</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

11

statements support the Court's conclusion that his wavier was knowing and voluntary.  As noted supra at pages 7-8, Gonzalez's remaining claims clearly fall within the scope of that waiver.

In sum, while Gonzalez's ineffective assistance claim as to his plea is denied on the merits, his remaining allegations of ineffective assistance and his allegations of a speedy trial violation fall within the scope of his waiver. Therefore, they are not properly before the Court.  For these reasons, Gonzalez's § 2255 motion is DENIED in its entirety.

## E.      Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Gonzalez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general

assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right **and** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Gonzalez is not entitled to a COA as to either of his claims.  That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claims.

## V.  CONCLUSION

For the above-stated reasons, Gonzalez's motion under 28 U.S.C. § 2255 (D.E. 45)

is DISMISSED WITH PREJUDICE.   The Court also DENIES him a Certificate of

Appealability.


Ordered this 11th day of June, 2007.


_Hayden Head_

HAYDEN HEAD
CHIEF JUDGE